ATTORNEYS FOR APPELLANT
Stacy R. Uliana
Bargersville, Indiana

John H. Kenney
Indiana Public Defender Council
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Andrew A. Kobe
Joseph Y. Ho
Deputy Attorneys General
Indianapolis, Indiana

In the

# Indiana Supreme Court



FILED
May 19 2015, 11:54 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 52S05-1408-CR-563

CORNELIUS HINES,                                        *Appellant (Defendant)*,

v.

STATE OF INDIANA,                                       *Appellee (Plaintiff)*.

Appeal from the Miami Superior Court, No. 52D02-1209-FC-236
The Honorable Daniel C. Banina, Judge

On Transfer from the Indiana Court of Appeals, No. 52A05-1312-CR-594

**May 19, 2015**

**Dickson, Justice.**

Following a jury trial, the defendant Cornelius Hines was convicted of Criminal Confinement and Battery. He has appealed claiming violations of both Indiana's constitutional and common law proscriptions against double jeopardy and seeking review of sentence inappropriateness. We find that the defendant's two convictions do not violate the common law but do run afoul of the Double Jeopardy Clause of the Indiana Constitution.

On August 28, 2012, while incarcerated at the Miami Correctional Facility, the defendant

suffered a seizure which brought him to the infirmary.  Because the defendant had urinated on himself, correctional officer Regina Bougher escorted him to another room in the infirmary to get a change of clothes from his property, which was kept in a tote.  After the defendant retrieved his clothes, he bent over to push the tote with his hands and then lunged towards the officer, striking her on the left side of her ribs with his head and shoulder.  Having pinned the officer to the wall, the defendant hit the officer's head against a filing cabinet or wall and then held her in a headlock with his left hand on her right arm and his right hand over her mouth and face.  After not "very long"—less than five minutes, the officer was able to break from the defendant's grip and radio for assistance.  Tr. at 174.  She suffered a cut in her mouth, pain and bruising in her ribs, a bruise on her right arm, and a concussion as a result of the attack.  The State charged the defendant with Criminal Confinement as a Class C felony and Battery as a Class D felony.  A jury found him guilty as to both charges, and the trial court sentenced the defendant to concurrent terms of eight years for Criminal Confinement and three years for Battery.  The Court of Appeals affirmed.  Hines v. State, No. 52A05-1312-CR-594, 14 N.E.3d 133 (Ind. Ct. App. June 17, 2014) (table).

Generally averring violation of double jeopardy under the Indiana Constitution and common law, the defendant makes three alternative arguments.  In one, he argues that, even if the force he used to lunge against the officer were considered separately from the force he used to pin her against the wall, the continuous crime doctrine requires that such conduct be considered as a continuous single transaction, a species of common law double jeopardy.  He alternatively argues that his force used to lunge into the officer was the very same force he used to pin her against the wall, and thus there is a reasonable possibility that the jury relied on the same evidence—this force—to convict him of both offenses, in violation of the Double Jeopardy Clause of the Indiana Constitution, Article 1, Section 14.  His third alternative double jeopardy argument is that his convictions for both Battery as a Class D felony and Confinement as a Class C felony violate Indiana common law double jeopardy because both convictions were enhanced based on the same bodily injury.  In addition to these claims, the defendant seeks sentence review under Appellate Rule 7(B).

2

## 1. Continuous Crime Doctrine

The defendant argues that, under protections against double jeopardy in the Indiana Constitution and Indiana common law, both his convictions cannot stand because "in reality, pushing and pinning [the officer] against the wall is one continuous act with the same purpose" and thus "the same force was used to support both convictions." Appellant's Br. at 4. "Where the issue presented on appeal is a pure question of law, we review the matter de novo." State v. Moss-Dwyer, 686 N.E.2d 109, 110 (Ind. 1997).

The defendant focuses on his common law argument on transfer, arguing that the continuous crime doctrine applies regardless of whether actions are charged as the same or distinct offenses and that the defendant's act of pushing the officer constitutes just one criminal conviction. The defendant urges that this Court should follow Buchanan v. State, 913 N.E.2d 712, 720–21 (Ind. Ct. App. 2009), *trans. denied*, where the Court of Appeals extended the continuous crime doctrine to vacate two distinct chargeable crimes. The State takes the opposite position, relying on Walker v. State, 932 N.E.2d 733, 737 (Ind. Ct. App. 2010), *reh'g denied*, where the Court of Appeals panel explicitly disagreed with Buchanan and limited the continuous crime doctrine to situations "where a defendant has been charged multiple times with the same offense." We largely agree with the Walker approach but write to restore and clarify the application of this common law doctrine. Ultimately, we agree that the continuous crime doctrine does not apply to the facts of this case.

The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense. "The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." Boyd v. State, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002), *trans. not sought*; *see* Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002) (recognizing "a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in Richardson"). The Legislature, not this Court, defines when a criminal offense is "continuous," e.g. not terminated by a single act or fact

but subsisting for a definite period and covering successive, similar occurrences. We have applied the continuous crime doctrine in the context of felony murder and robbery,[1] confinement,[2] and kidnapping;[3] situations where the crime charged, as defined by statute, was "continuous." For example, in Eddy v. State, we interpreted the statutory requirement that a homicide-robbery transaction be continuous[4] to encompass a transaction where all the statutory elements of the robbery had been completed *before* the commission of the homicide:

> This Court has long declined to define the phrase, "while committing," in terms of the chronological completion of the statutory elements of the underlying felony. [To do so] would elevate form over substance. . . . A crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction. A homicide and robbery are deemed to be one continuous transaction when they are closely connected in time, place, and continuity of action.

496 N.E.2d 24, 28 (Ind. 1986) (internal citations omitted).

To the extent Buchanan stands for the proposition that the continuous crime doctrine may be judicially extended to two distinct criminal offenses, we disagree. *See* Buchanan, 913 N.E.2d at 720–21 (ultimately relying on Nunn v. State, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998), *trans. denied*). First, within constitutional limitations, our Legislature has the inherent power to define crimes, State v. Clark, 247 Ind. 490, 495, 217 N.E.2d 588, 590–91 (1966), including when a crime may subsist for a definite period or cover successive, similar occurrences.[5] Second, Nunn

---

[1] Krempetz v. State, 872 N.E.2d 605, 610–11 (Ind. 2007); Jackson v. State, 597 N.E.2d 950, 960 (Ind. 1992); Mahone v. State, 541 N.E.2d 278, 280 (Ind. 1989); Eddy v. State, 496 N.E.2d 24, 27–28 (Ind. 1986); Mauricio v. State, 476 N.E.2d 88, 92 (Ind. 1985); Thompson v. State, 441 N.E.2d 192, 194 (Ind. 1982); Stroud v. State, 272 Ind. 12, 14, 395 N.E.2d 770, 771 (1979); *see also* Young v. State, 725 N.E.2d 78, 81 (Ind. 2000) (discussing when asportation occurred in the context of robbery).

[2] Bartlett v. State, 711 N.E.2d 497, 500 (Ind. 1999); Haggard v. State, 445 N.E.2d 969, 972 (Ind. 1983), *holding modified on other grounds*, Bailey v. State, 472 N.E.2d 1260 (Ind. 1985).

[3] Bartlett, 711 N.E.2d at 500.

[4] A person who "kills another human being *while* committing or attempting to commit [certain listed felonies] commits murder, a felony." Ind. Code § 35-42-1-1(2) (Burns 1979 Repl.) (emphasis added), *quoted in* Eddy, 496 N.E.2d at 27 n.1.

[5] For example, there is a statute limiting sentences for non-violent criminal convictions "arising out of an episode of criminal conduct," often referred to as the "single episode" rule. *See* Ind. Code 35-50-1-2(b), (c) ("As used in this section, 'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance. . . . The court may order terms of imprisonment to be served consecutively . . . . However, except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.").

too broadly paraphrased precedent when it stated, "[O]ur decisions have long recognized that actions which are sufficient in themselves to constitute separate criminal offenses may be so compressed . . . as to constitute a single transaction." *See* <u>Nunn</u>, 695 N.E.2d at 125 (citing <u>Eddy</u>, 496 N.E.2d at 28 and <u>Thompson v. State</u>, 441 N.E.2d 192, 194 (Ind. 1982)). In <u>Eddy</u> and <u>Thompson</u>, we limited our analysis to whether a homicide occurring after a robbery could be considered "continuous" under Indiana's felony-murder statute. *See* <u>Eddy</u>, 496 N.E.2d at 28 ("*A homicide and robbery* are deemed to be one continuous transaction when they are closely connected in time, place, and continuity of action.") (emphasis added); <u>Thompson</u>, 441 N.E.2d at 194 ("Furthermore, *the robbery and the shooting* were so closely connected . . . as to be one continuous transaction.") (emphasis added) (quoting <u>Stroud v. State</u>, 272 Ind. 12, 14, 395 N.E.2d 770, 771 (1979)). The continuous crime doctrine applies only where a defendant has been charged multiple times with the same "continuous" offense.

The continuous crime doctrine does not apply to the facts of this case. The defendant was convicted of Criminal Confinement as a Class C felony[6] and Battery as a Class D felony.[7] He was not convicted of multiple charges of criminal confinement, nor multiple charges of battery. Nor is Battery a crime for which all of the elements necessary to impose criminal liability are also elements found in Criminal Confinement, or vice versa. Criminal Confinement and Battery are two distinct chargeable crimes to which the continuous crime doctrine does not apply.

## 2. Double Jeopardy under Actual Evidence Test

As an alternative claim, the defendant focuses on Article 1, Section 14 of the Indiana Constitution, which provides that "No person shall be put in jeopardy twice for the same offense."

---

[6] Ind. Code § 35-42-3-3 (2012) ("(a) A person who knowingly or intentionally . . . confines another person without the other person's consent . . . commits criminal confinement. . . . (b) The offense of criminal confinement defined in subsection (a) is . . . (1) a Class C felony if . . . (C) it results in bodily injury to a person other than the confining or removing person . . . .").

[7] Ind. Code § 35-42-2-1 (2012) ("(a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . (2) a Class D felony if it results in bodily injury to . . . (J) an employee of a penal facility or a juvenile detention facility . . . while the employee is engaged in the execution of the employee's official duty . . . .").

The defendant preliminarily alleges trial court error in finding his claim of double jeopardy moot. He asserts that "at sentencing, the trial court recognized that there may be a double jeopardy problem with the two convictions but found the issue moot because he ran the two sentences concurrently." Appellant's Br. at 4. We agree with the defendant that this issue is not moot. A double jeopardy violation occurs when a court enters judgment twice for the same offense "and cannot be remedied by the 'practical effect' of concurrent sentences or by merger after conviction has been entered." Jones v. State, 807 N.E.2d 58, 67 (Ind. Ct. App. 2004), *trans. denied*; *accord* Green v. State, 856 N.E.2d 703, 704 (Ind. 2006); Davis v. State, 770 N.E.2d 319, 323 n.1 (Ind. 2002); Wise v. State, 719 N.E.2d 1192, 1200–01 (Ind. 1999); McBroom v. State, 530 N.E.2d 725, 727 (Ind. 1988). The fact that the sentences were ordered to be served concurrently does not preclude our consideration of the defendant's double jeopardy claims.

In Richardson v. State, this Court examined the Double Jeopardy Clause of the Indiana Constitution and explained in part that "two or more offenses are the 'same offense' . . . if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999).

On appeal, the defendant contends that his convictions violate this "actual evidence" test because, in his view, the evidence used to show his lunge into the officer was the same evidence used to show the force he used to pin her against the wall and therefore the same act. In response, the State divides the defendant's actions into a lunge striking and injuring the officer's ribs (the battery) and a headlock pinning the officer against a wall and injuring her right arm (the confinement). The fact that the same evidence may have been used to establish a single element of each of two offenses does not constitute a double jeopardy violation, Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002), but proper application of the actual evidence test in light of the totality of circumstances otherwise compels the conclusion that one of the defendant's two convictions must be vacated on double jeopardy grounds.

In order to find a double jeopardy violation under the actual evidence test, a reviewing

court must conclude there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense. Garrett v. State, 992 N.E.2d 710, 722–23 (Ind. 2013) (quoting Richardson, 717 N.E.2d at 53); Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting Spivey, 761 N.E.2d at 833). "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective . . . .'" Lee, 892 N.E.2d at 1234 (quoting Spivey, 761 N.E.2d at 832). In determining the facts used by the fact-finder, "it is appropriate to consider the charging information, jury instructions, [] arguments of counsel" and other factors that may have guided the jury's determination. Lee, 892 N.E.2d at 1234 (citing Spivey, 761 N.E.2d at 832 and Richardson, 717 N.E.2d at 54 n.48).

The defendant was convicted of Criminal Confinement as a Class C felony and Battery as a Class D felony. For the criminal confinement conviction, the State was required to establish that (1) the defendant (2) knowingly or intentionally, (3) confined the officer without her consent, which (4) resulted in bodily injury to the officer. Ind. Code § 35-42-3-3 (2012). For the battery, the State needed to establish that (a) the defendant, (b) knowingly or intentionally, (c) touched the officer in a rude, insolent, or angry manner, which (d) resulted in bodily injury to the officer, an employee of a penal detention facility, while the officer was engaged in the execution of her official duty. Ind. Code § 35-42-2-1 (2012). At issue in this actual evidence analysis is whether there is a reasonable possibility that the evidence used by the fact-finder to establish the "touched the officer in a rude, insolent, or angry manner" elements of battery may also have been used to establish the "confined" element of criminal confinement.

The evidence presented at trial indicated that after the defendant retrieved a change of clothes from his tote, he bent over to push the tote with his hands and then lunged towards the correctional officer who had escorted him to the property room, striking her in the ribs with his head and shoulder. Having pinned the officer to the wall, the defendant hit the officer's head against a filing cabinet or wall and then held her in a headlock with his left hand on her right arm and his right hand over her mouth and face. After not "very long"—less than five minutes, the officer was able to break from the defendant's grip and radio for assistance. She suffered a cut in

7

her mouth, pain and bruising in her ribs, a bruise on her right arm, and a concussion as a result of the attack.

Although there was evidence presented at trial that could have supported both the criminal confinement charge and the battery, the inquiry does not end there. "Indiana's Double Jeopardy Clause requires charges to be prosecuted 'in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts.'" Lee, 892 N.E.2d at 1235 (quoting Richardson, 717 N.E.2d at 53 n.46). If there is a reasonable possibility that the jury mixed evidence from the entire assault to establish the confined element of criminal confinement, both convictions cannot stand because the facts establishing criminal confinement would also establish battery. "'Reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." Lee, 892 N.E.2d at 1236.

The State analogizes this case to Hardley v. State, 893 N.E.2d 1140 (Ind. Ct. App. 2008), *vacated and aff'd on other grounds*, 905 N.E.2d 399 (Ind. 2009); we disagree. In Hardley, for each charge, "the State specifically alleged" that certain evidence would support that charge. *See id.* at 1145 ("For the battery charge, the State specifically alleged that striking with the hands and/or fists was the touching, not any touching that might have restrained Richmond. As for the criminal confinement charge, the State specifically alleged that Hardley restrained Richmond by holding her down, not through any physical blows."). Here, the defendant concedes the State's trial strategy was to support the battery charge with the lunge and the confinement charge with the act of pinning the officer against the wall. Whatever its strategy, however, at trial the State failed to specifically allege and communicate to the jury what different evidence supported what charge.

In this case, the final instructions—essentially identical to the charging information—did not inform the jury what different evidence supported each charge. The final instruction for Count I, criminal confinement, stated "Hines did knowingly or intentionally *confine* [the officer without her consent], said act resulting in bodily injury to [the officer], to-wit: pain . . . ." Appellant's App'x Vol. I at 24w (emphasis added). The term "confine" was defined as "*to substantially*

8

*interfere with the liberty* of a person." *Id.* at 24cc (emphasis added). For Count II, the final instruction stated "Hines did knowingly *touch* [the officer], an employee of a penal detention facility, *in a rude, insolent, or angry manner*, *to-wit: grabbed and/or struck her* resulting in bodily injury, to-wit: pain . . . ." *Id.* at 24w (emphasis added). These instructions left open the reasonable possibility that the fact-finder could use the same evidence to establish substantial interference with the liberty of a person for confinement and grabbing in a rude, insolent, or angry manner for battery.

During opening argument, the State seemed to describe the sequence of events as one continuous lunge/pin assault:

> [Hines] pauses and then *lunges* at [the officer] putting his shoulder and head into her ribcage causing pain. *He continues on with his violent act and pins* her up against a concrete wall where he restrains her right arm, secures her left arm and puts another hand over her face where she cannot move and then strikes her head at least two times against a concrete wall. *At some point in time* she is unable to move. . . . [T]he State will prove beyond a reasonable doubt that not only did the defendant *batter this correctional officer by causing pain by striking the sides of her ribs*, that he *also confined her* to the point where she could not move.

Tr. at 125–26 (emphasis added). The State relied on the blow to the officer's ribcage to support its battery charge, not the head banging. And although the State identified for the jury what evidence supported the battery charge, it failed to identify what evidence supported the confinement charge, stating only that "[a]t some point in time" the officer was "unable to move." *Id.* at 125.

During closing argument, the State read the two charges for battery and confinement but then described the sequence of events without tying each fact to the charge it supported:

> [T]he defendant viciously *attacked, assaulted, and confined* [the officer] . . . *by lunging and initially striking* her in her ribcage with his head and his shoulder. She testified that caused her pain, discomfort, and actual bruising to her ribs. *The assault continued* whereby he *pins her up against the wall* placing one of her arms up against the wall, taking his other arm and ultimately having it across her face, pressing his body against hers, *making her immobile as he bangs her head on the concrete wall*. [The officer] testified that she had received bruises from that right arm that was pinned against the wall. She also testified that because of the slamming of her head against the concrete wall that she sustained injury requiring several visits to a neurologist.

*Id.* at 195–96 (emphasis added). It is possible that the jury followed the apparent organization of

9

the State's argument, namely rib strike/injury, headlock/injury, head banging/injury; however, without a specific allegation regarding what different evidence supported what charge and with evidence of two batteries surrounding evidence of the headlock, it is also reasonably possible that the jury based the battery conviction and the criminal confinement conviction on one continuous assault.

On rebuttal, in response to defense counsel's remark to the jury that "if the same facts are used for the battery that are used for the confinement then you can't find him guilty of both acts" and "if the force that was used to effectuate the battery is the same force to effectuate the confinement then he can't be found guilty of both," *id.* at 197–98, the State drew a line where the battery ended and the confinement began but obfuscated such line with its emphasis on control:

> In [the officer's] case, she couldn't move at all. The defendant knocked the wind out of her, when he attacked her and bruised her ribs. *If he just wanted to batter her, we're done. No. He continues on*. . . . By his own words he was trying to grab her by the throat. Got her face. . . . Why did he knock the wind out of her when he struck her in the ribs? Why did he want her to not be able to use her radio? Why did he want the door shut? Why did he want her on the ground? Several things can happen when a commission of a crime occurs. . . . [In] this assault on [the officer] several criminal acts occurred. She was battered and she was subsequently confined. Two separate concepts. *She was battered and received injury on the blow to her ribcage. She was injured when she was confined against the wall, grabbed her arm and bruised it when he attempted to grab her around the throat but got her face. She was injured* when she tried to break free from his grip when she bit his hand. Common sense rules the day. . . . If you review the evidence in its entirety you will see that the acts of the defendant are distinct from one another even though they occurred in the same room on the same day. . . . This is about control. This is about respect. This is about the defendant wanting to do what he wants, how he wants, and when he wants.

*Id.* at 198–200 (emphasis added). The State added confusion when it described how the officer "was battered and received injury" and then gave two instances how she "was injured," rather than how she was confined.

This case is analogous to several cases also involving charges of battery and criminal confinement where the courts found a reasonable possibility that the fact-finder used the same evidentiary fact to establish the essential elements of both offenses. *See, e.g.*, Ransom v. State, 850 N.E.2d 491, 500–01 (Ind. Ct. App. 2006) (finding the jury instructions could portray sepa-

rate incidents but the State did not clearly explain to the jury that certain evidentiary facts allegedly constituted the battery and that separate evidentiary facts allegedly constituted the confinement), *trans. not sought*; Stafford v. State, 736 N.E.2d 326, 331–32 (Ind. Ct. App. 2000) (finding a double jeopardy violation because evidence of putting a rope around the victim's neck constituted the basis for both charges, namely battery with a deadly weapon and criminal confinement "being armed with a deadly weapon, to wit: a rope), *trans. denied*;[8] Ely v. State, 655 N.E.2d 372, 374–75 (Ind. Ct. App. 1995) (finding a double jeopardy violation because evidence of grabbing the victim and pointing a knife at her chest area constituted the basis for both charges), *trans. not sought*. In a similar case, this Court found a reasonable possibility that the jury used the same evidence, namely restraining the victim while suffocating with a pillow and tying a cord around her neck, to establish the essential elements for both criminal confinement and murder by asphyxiation. Lowrimore v. State, 728 N.E.2d 860, 868 (Ind. 2000).

Based on the charging information, jury instructions, and arguments of counsel, we find a reasonable possibility that the same evidence used by the jury to establish the essential elements of battery was also included among the evidence used by the jury to establish the essential elements of criminal confinement. Thus, under our actual evidence test, the defendant was twice prosecuted for the same offense in violation of Article 1, Section 14 of the Indiana Constitution. Accordingly, we remand to the trial court with instructions to vacate the battery conviction, the conviction carrying the lesser sentence.[9]

### 3. Appellate Review of Sentence Appropriateness

Sentenced to concurrent maximum terms of three years for Battery and eight years for

---

[8] The court in Stafford noted "had the State charged and proven at trial that the conduct supporting the confinement charge was the act of stuffing [the victim] into the trunk of the car, [the defendant's] double jeopardy protections would not have been implicated." 736 N.E.2d 326, 332 n.6 (Ind. Ct. App. 2000), *trans. denied*. Similarly, we note the State in this case might have avoided double jeopardy problems had it alleged specific and different conduct to support each charge.

[9] Because we vacate Hines's aggravated Battery conviction, we find it unnecessary to address his separate common law double jeopardy argument that both the enhancement of the battery to a Class D felony and the enhancement of the confinement to a Class C felony are based on the same bodily injury.

Criminal Confinement, for a total sentence of eight years, the defendant does not contest the aggregate sentence for his Battery and Confinement convictions but rather seeks appellate review and revision of the maximum sentence on the Class C felony. Such relief is available if, after due consideration of the trial court's sentencing decision, the Court finds that in our independent judgment, "the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B), *quoted in* Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224.

Because we find a double jeopardy violation and vacate the defendant's Battery conviction, we now focus on his remaining conviction of Criminal Confinement as a Class C felony, for which the sentencing range is two to eight years, with an advisory sentence of four years. Ind. Code § 35-50-2-6 (2012). The defendant requests that this Court revise his sentence "to an appropriate sentence of six years" or to remand to the trial court with guidance for re-sentencing. Appellant's Br. at 12. The defendant emphasizes his maximum sentence, arguing that he "should not be considered part of the class of the very worst offenders." *Id.* at 10.

Regarding the nature of the offense, the defendant simply states "all batteries and criminal confinements are inherently violent" and his confinement was "no more violent than a standard confinement." *Id.* at 11. The State, in contrast, emphasizes the severity and brutality of the crime: "the six-feet-fall Defendant savagely attacked a five-feet-tall female correctional officer by violently tackling her, pinning her body to a wall, and bashing her head against the wall." Appellee's Br. at 14. The officer's injuries rendered her medically unable to return to work for four months, and she was still on medication as a result of her injuries at the time of trial. Moreover, the defendant admitted to being mad and threatening prison employees en route to and upon arriving at the infirmary. The State adds that, should this Court vacate the Battery conviction, the facts of the Battery would exceed the statutory elements of the Criminal Confinement

and amplify the nature of that offense.

Regarding his character, the defendant concedes he "does have a significant criminal record with associated violence," but argues his abusive childhood in the foster care system and mental health issues mitigate his culpability. Appellant's Br. at 10. The defendant focuses on his "long-standing, debilitating mental illness," arguing it "most distinguishes him from the worst offenders" and entitles him to a *minimum* sentence. *Id.* at 11–12. The defendant reports he has been diagnosed with a number of mental health issues, suffers from seizures, and has attempted suicide four times. The defendant admits he did not present testimony from a psychiatrist but argues that his mental illness has severely limited his ability to function and that there is a direct correlation between his mental illness and crimes. In support, the defendant points to instances where he pled guilty but mentally ill—verified by the presentence investigation report—and the fact that he was serving his sentence in the correctional facility's psychiatric ward. The State responds that the defendant's criminal history "demonstrate[s] that he is a poor candidate for lenient treatment." Appellee's Br. at 15. As an adult, the defendant has been arrested four times resulting in three felony convictions—all for violent crimes: Battery on a Child With Injury, Sexual Battery, and Rape—and has been placed on adult probation twice. Further, the defendant committed the instant offense while incarcerated for his rape conviction and on probation for his other two felonies. As to character, we cannot disregard his significant criminal history, and the record does not establish otherwise generally virtuous character.

We conclude the defendant has failed to demonstrate that his sentence is inappropriate for his character and the nature of the offense. His eight year sentence is not inappropriate.

**Conclusion**

The continuous crime doctrine does not apply to the facts of this case, but the circumstances of the trial establish a violation of the Indiana Constitution's Double Jeopardy Clause under the actual evidence test. We vacate the defendant's conviction for Battery as a Class D felony and its concurrent three year sentence but affirm his conviction and eight year sentence for Criminal Confinement as a Class C felony. We decline to grant relief under Appellate Rule 7(B)

13

for sentence inappropriateness.  This cause is remanded to the trial court for further proceedings consistent with this opinion.

Rush, C.J., and Rucker and David, JJ., concur.

Massa, J., concurs in result.