## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 25 2016, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Johnson a/k/a Garland P. Jeffers, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | May 25, 2016 <br><br> Court of Appeals Case No. 49A05-1511-CR-1916 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. 49G04-1407-F5-37215 |

**Crone, Judge.**

# Case Summary

Mark Johnson, a/k/a Garland P. Jeffers ("Jeffers"),[1] challenges the sufficiency of the evidence supporting his conviction for level 5 felony burglary. Finding that his arguments essentially amount to requests to reweigh evidence, we affirm his burglary conviction. Additionally, we review sua sponte his two convictions for resisting law enforcement. Concluding that those convictions violate double jeopardy principles, we remand with instructions to vacate his class A misdemeanor resisting law enforcement conviction and sentence.

# Facts and Procedural History

The facts most favorable to the verdict are as follows. Around 11:00 p.m. on July 24, 2014, Nikita Barbee was sitting in her vehicle outside a storage facility when she observed a white pickup truck drive into a field between MacAllister's Machinery and an abandoned house. She saw two men in dark clothing exit the pickup and run behind the abandoned house. She called 911 and stayed on the phone with the dispatcher as she heard thuds and noticed the two men loading items into the back of the pickup. Shortly thereafter, the men drove away in the pickup.

At that time, Beech Grove Police Officer Lee Huffman was patrolling nearby and observed a pickup fitting Barbee's description. When the pickup stopped at

---

[1] We note that the appellant refers to himself in his briefs and certain pro se filings as Garland P. Jeffers-El. As best we can discern his legal name is Garland P. Jeffers, and we refer to him as such.

a stoplight, Officer Huffman drove up next to it and observed two African-American men inside. The officer made a U-turn, pulled up behind the pickup, and radioed for assistance. He activated his lights and attempted to initiate a traffic stop, but the pickup failed to stop. When the driver (Jeffers) made a U-turn and headed toward I-465, Officer Huffman activated his siren and radioed his new position to the backup officer. Again refusing to stop, Jeffers entered I-465 going the wrong way on an off-ramp. He made another U-turn, and the officer remained in pursuit. A high-speed chase ensued, with the pickup weaving in and out of traffic at speeds in excess of 100 miles per hour. Eventually the pickup exited the freeway, and the chase continued at high speeds through several red lights.

[4]     After the pickup crashed in front of a car lot, officers observed the driver, Jeffers, and his passenger, Anthony Allen, as they ran from the vehicle, through the car lot, and into a wooded area. With the help of a K-9 unit, officers apprehended Jeffers and Allen, placed them in custody, and returned with them to the crash site. In and around the pickup bed, police found weed eaters, leaf blowers, chainsaws, and hedge trimmers, all of which were subsequently linked by serial number to inventory missing from MacAllister's. Police visited MacAllister's' property and found a large hole cut out of the perimeter fence and a pair of bolt cutters. Police also found that an ordinarily locked and barred door to the warehouse was unlocked. MacAllister's service manager Tim Retherford reported that a man fitting Allen's description had shopped at

MacAllister's that afternoon, stayed an hour and a half, and behaved strangely near the unlocked door.

[5] At the scene, Jeffers told police that his name was Mark Johnson, but police later determined that his real name was Jeffers. The State charged Jeffers with level 5 felony burglary, level 6 felony resisting law enforcement, and class A misdemeanor resisting law enforcement. The jury found Jeffers guilty as charged. The trial court entered judgment on all three counts and sentenced him to four years for burglary, with concurrent two-year and one-year terms on the resisting law enforcement counts. Jeffers now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The evidence is sufficient to support Jeffers's burglary conviction.

[6] Jeffers maintains that the evidence is insufficient to support his burglary conviction. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. (citation omitted). "Where the evidence of guilt is essentially circumstantial,

the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Jones v. State*, 924 N.E.2d 672, 674 (Ind. Ct. App. 2010) (citation omitted). Without question, a burglary conviction may be supported solely by circumstantial evidence. *Brink v. State*, 837 N.E.2d 192, 196 (Ind. Ct. App. 2005).

[7] Pursuant to Indiana Code Section 35-43-2-1, the State alleged that Jeffers committed level 5 felony burglary by breaking and entering MacAllister's building or structure with intent to commit the felony of theft in it. Jeffers's sufficiency claim essentially focuses on his identity.

[8] Here, Officer Huffman received a radio dispatch of a possible burglary involving two men in dark clothing in a white pickup. When he saw a white pickup near the location described in the dispatch, he pulled up beside it, noticed two men inside whose dark clothing matched the witness's description, and radioed for backup. Instead of stopping when Officer Huffman activated his lights and siren, Jeffers led the officer on a high-speed chase, which entailed entering the interstate going the wrong direction, making a U-turn, exiting the highway, running several red lights, and eventually crashing the truck. Even then, Jeffers and his cohort Allen fled on foot and were apprehended after attempting to hide from the pursuing officers. Jeffers's flight both by vehicle and on foot, as well as his attempts to avoid arrest, are circumstantial evidence of his consciousness of guilt. *See Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) ("[E]vidence of flight may be considered as circumstantial evidence of

consciousness of guilt .... [and] evidence of an attempt to avoid arrest also tends to show guilt.").

[9] Both circumstantial and physical evidence support a reasonable inference that Jeffers participated in the burglary. Jeffers drove and crashed the white pickup and was apprehended with his passenger Allen. The contraband found in the pickup was identified by serial number as merchandise missing from MacAllister's. MacAllister's service manager Retherford described Allen as the shopper that he had encountered late that afternoon who had stayed an unusually long time and behaved strangely near the door that police found to have been unlocked, thus supporting a reasonable inference concerning the duo's access to the building later that night. A large hole in the fence surrounding MacAllister's as well as wire cutters found on the property the next day explain the means of entrance to the grounds. Barbee witnessed two men in clothing that matched Jeffers's and Allen's running from the white pickup and subsequently loading items into its bed in the field adjacent to MacAllister's. To the extent that Jeffers challenges Barbee's vantage point as the sole eyewitness, he invites us to reweigh evidence and judge witness credibility, which we may not and will not do. The evidence most favorable to the verdict is sufficient to support Jeffers's burglary conviction.

# Section 2 – We review sua sponte Jeffers's convictions for resisting law enforcement and remand with instructions to vacate his class A misdemeanor conviction on double jeopardy grounds.

[10] Finally, we address sua sponte the trial court's entry of judgment against Jeffers on both counts of resisting law enforcement. Because double jeopardy violations implicate fundamental rights, we may review them sua sponte. *Hayden v. State*, 19 N.E.3d 831, 842 (Ind. Ct. App. 2014), *trans. denied* (2015).

[11] Here, Jeffers was convicted of both level 6 felony resisting law enforcement and class A misdemeanor resisting law enforcement. The record indicates that Jeffers led police on a high-speed vehicle chase followed by a chase on foot.[2] This Court has previously stated that the continuous crime doctrine "reflects a category of Indiana's prohibition against double jeopardy." *Walker v. State,* 932 N.E.2d 733, 736 (Ind. Ct. App. 2010).[3] "The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense." *Hines v. State,* 30 N.E.3d 1216, 1219 (Ind. 2015). The doctrine "does not seek to

---

[2] The amended affidavit charged Jeffers with level 6 felony resisting law enforcement using a vehicle (Ind. Code § 35-44.1-3-1(b)) and class A misdemeanor resisting law enforcement based on Jeffers's failure to comply with the officers' commands to stop (Ind. Code § 35-44.1-3-1(a)(3)).

[3] Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Fifth Amendment to the United States Constitution provides that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." We have discerned no difference between the analysis of the continuous crime doctrine under Indiana or federal law. *Lewis v. State*, 43 N.E.3d 689, 691 n.1 (Ind. Ct. App. 2015).

reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Id.* This Court has repeatedly determined, under circumstances similar to those that occurred here, that a defendant's acts of fleeing by a vehicle and then on foot constitute one continuous act of resisting law enforcement. *Lewis v. State,* 43 N.E.3d 689, 691 (Ind. Ct. App. 2015); *Arthur v. State,* 824 N.E.2d 383, 385 (Ind. Ct. App. 2005), *trans. denied*; *Nevel v. State,* 818 N.E.2d 1, 5 (Ind. Ct. App. 2004).

[12] Because Jeffers's actions of fleeing the police by vehicle and then on foot constituted one continuous act of resisting law enforcement, the entry of judgment on both counts violated his protection against double jeopardy. Accordingly, we remand with instructions to vacate Jeffers's conviction and sentence for class A misdemeanor resisting law enforcement. Because the trial court imposed concurrent sentences, the vacation of the class A misdemeanor conviction and sentence will have no effect on Jeffers's aggregate sentence. In all other respects, we affirm.

[13] Affirmed and remanded with instructions.

Najam, J., and Robb, J., concur.